UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| Linda McCutcheon, | ) | Civil Action No.: 5:04-2467-RBH |
|       Plaintiff, | ) | |
| v. | ) | **O R D E R** |
| Wal-Mart Stores, Inc. a foreign corporation, | ) | |
|       Defendant. | ) | |

| | | |
|---|---|---|
| Winfield McCutcheon, | ) | |
|       Plaintiff, | ) | Civil Action No.: 5:04-2468-RBH |
| v. | ) | |
| Wal-Mart Stores, Inc., a foreign corporation, | ) | **O R D E R** |
|       Defendant. | ) | |

In these consolidated cases, the plaintiff husband and wife have brought actions arising out of their employment with the defendant, Wal-Mart. Plaintiff Winfield McCutcheon ("McCutcheon") alleges wrongful termination against public policy for filing a workers' compensation claim under S.C. Code Ann. §41-1-80; racial discrimination under 42 U.S.C. § 1981; retaliation under §1981; disparate discipline race discrimination under §1981; wrongful termination pursuant to an employment contract; and breach of contract. Mrs. McCutcheon ("Mrs. McCutcheon") alleges causes of action for wrongful termination in violation of an employment contract, breach of contract, and constructive discharge.

1

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A), and Local Rule 73.02(B)(2)(g), D.S.C., all pretrial matters in employment discrimination cases are referred to a United States Magistrate Judge for consideration.

Plaintiffs filed their cases on June 16, 2004. Defendant removed the cases to this Court on July 23, 2004, and filed its answer on July 30, 2004. Defendant filed a Motion for Summary Judgment on June 15, 2005. Plaintiffs filed responses on July 28, 2005 after being granted extensions of time. Defendant filed a reply on August 1, 2005.

This matter is now before the undersigned for review of the Report and Recommendation ("the Report") filed by United States Magistrate Judge Bristow Marchant, to whom this case had previously been assigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 73.02(B)(2)(g).

In his Report, Magistrate Judge Marchant carefully considers the issues and recommends that the defendant's Motion for Summary Judgment be granted as to Mrs. McCutcheon's case. With regard to McCutcheon's case, the Magistrate Judge recommended dismissal of the first, second and fourth causes of action. He recommended that summary judgment be denied as to the third cause of action under §1981 for retaliation; he further recommended dismissal of the fifth and sixth causes of action, except to the extent these causes of action allege wrongful termination or breach of contract based on violation of the alleged right set forth in the employee handbook not to be retaliated against for reporting harassment.

Defendant filed objections to the Report on January 27, 2006. Plaintiffs filed objections to the Report on January 31, 2006. Defendant filed a response to plaintiff's objections on February 13, 2006.

## **Standard of Review**

In conducting this review, the Court applies the following standard:

> The magistrate judge makes only a recommendation to the Court, to which any party may file written objections . . . . The Court is not bound by the recommendation of the magistrate judge but, instead, retains responsibility for the final determination. The Court is required to make a *de novo* determination of those portions of the report or specified findings or recommendation as to which an objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the report and recommendation to which no objections are addressed . . .   While the level of scrutiny entailed by the Court's review of the Report thus depends on whether or not objections have been filed, in either case, the Court is free, after review, to accept, reject, or modify any of the magistrate judge's findings or recommendations.

Wallace v. Housing Auth. of the City of Columbia, 791 F. Supp. 137, 138 (D.S.C. 1992) (citations omitted).

## Summary Judgment Standard

Defendant filed its motion for summary judgment pursuant to Rule 56, FRCP. The moving party bears the burden of showing that summary judgment is proper. Summary Judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rule 56,Fed.R.Civ.P; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine issue for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine issue for trial. Fed. R. Civ. P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation,

or conclusory allegations to defeat a motion for summary judgment. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence relied upon must meet "the substantive evidentiary standard of proof that would apply at trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

**Facts**

Plaintiff McCutcheon is an African-American male who was employed during the time relevant to these lawsuits at Wal-Mart in Orangeburg, South Carolina as a maintenance supervisor. Plaintiff Mrs. McCutcheon is a Causasian female, the wife of McCutcheon, and was also employed in the maintenance department in the Orangeburg store. Other African-American employees at the store apparently resented the McCutcheon's inter-racial marriage, and many negative racial comments were made by co-workers. McCutcheon filed a claim with the South Carolina Human Affairs Commission (SCHAC) on December 16, 2003 on the basis that the defendant had not appropriately disciplined the other employees for making the comments. McCutcheon was injured at work on June 7, 2003, resulting in the filing of a worker's compensation claim.

On April 8, 2004, an incident occurred at the store which ultimately led to McCutcheon's discharge. He noticed that a customer's child had wet herself. McCutcheon testified that he advised the child's mother to request a manager to get her some dry clothes. Two African-American employees and Ulch, a Caucasian assistant manager, told McCutcheon that he should not have suggested that clothes be given to the child. An argument ensued. As a result, McCutcheon was counseled by the co-manager of the store, Jim Crosland, who was Caucasian. He was given a day off with pay and told to write a statement containing a plan of action to prevent such behavior from occurring again. Instead, the plaintiff prepared a statement containing complaints about the management of the store.

> I, Winfield McCutcheon, am returning to work on 4-10-04, following my D-Day. I want it to be known that I'm tired of lies being told on me and Jim upholding them. To prevent any further confusion, I will go to higher management before the management of Orangeburg Wal-Mart.

(Defendant's Exhibit 6 to Deposition of Winfield McCutcheon)

When McCutcheon refused to write a new statement in compliance with the company's request, he was terminated by Coleman, the African-American co-manager. Mrs. McCutcheon attended the meeting and, after McCutcheon was fired, she resigned from her position.

## Wrongful Termination Claim under S.C. Code §41-1-80

McCutcheon testified in his deposition that he had a fall while at work in the maintenance washroom at Wal-Mart on June 7, 2003. He required surgery due to an injury to his shoulder. The supervisor on duty wrote up the incident and sent him to the hospital. (McCutcheon depo., p. 105)

> Q. Did he make any kind of negative comments about your injury at all?
> A. No . . .
> Q. Well, did anybody ever say we don't care what your restrictions are, we want you to do this?
> A. Oh, no, no, no.
> Q. Did anyone ever discipline you as a result of your restrictions and your inability to do everything as part of your job?
> A. No.

(McCutcheon depo., p. 107)

McCutcheon testified that he missed between eight to ten weeks of work after that surgery. His second surgery was in June or July of 2004, after he was terminated on April 10, 2004. (McCutcheon depo., p. 26)

The Magistrate Judge recommends a finding that, since McCutcheon's worker's compensation claim was filed over a year before his termination and McCutcheon admitted that the incident resulting in termination occurred, the first cause of action should be dismissed. McCutcheon contends in his objections that his work-related injury was continuing and that, since he had informed his employer that

5

he needed a second surgery and was terminated a few months later, a jury issue is created. McCutcheon does not challenge in his objections the recommendation by the Magistrate Judge regarding the employer's reason given for the discharge that "whether or not the Defendant was justified for terminating McCutcheon based on this behavior, there is no dispute . . . that this incident occurred and that McCutcheon failed to comply with instructions given to him by management." (Report and Recommendation, page 9)

> S.C. Code Ann. §41-1-80 provides in pertinent part:
>
> No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the South Carolina Workers' Compensation Law . . .
>
> Any employer shall have as an affirmative defense to this section the following: . . . being disorderly . . . while at work, . . . failure to meet established employer work standards, . . . violating specific written company policy for which the action is a stated remedy of the violation.

Under the "determinative factor" test utilized under the above statute, an employee must show that he would not have been discharged "but for" filing the worker's compensation claim. Porter v. U.S. Alumoweld Co., Inc., 125 F.3d 243 (4th Cir. 1997), citing Wallace v. Milliken and Co., 305 S.C. 118, 406 S.E.2d 358 (1991).

> The burden of persuasion never shifts and the employee bears the burden of persuasion that the reason given for termination was pretextual....The employee may succeed in this, either directly by persuading the court that the discharge was significantly motivated by retaliation for [his] exercise of statutory rights, or indirectly by showing that the employer's proffered explanation [for the adverse action taken] is unworthy of credence.

Wallace, 406 S.E.2d at 360 (quoting Buckner v. General Motors Corp., 760 P.2d 803, 807 (Okla. 1998).

McCutcheon contends in support of his retaliation claim that Ulch told him he needed a doctor's statement to "cover (his) ass" when he missed work after the work-related accident. McCutcheon

contends that this statement is evidence which goes to prove that his discharge was in retaliation for filing the workers compensation claim. The Court does not believe that the requirement of a doctor's excuse is at all indicative of retaliation. In fact, McCutcheon admitted that Wal-Mart had a policy concerning unexcused absences and further admitted that after he obtained the doctor's excuse he was not disciplined as a result of missing work on that date. (McCutcheon depo., pp. 111-112)

As the Magistrate Judge pointed out, the incident involving the altercation between the plaintiff and manager Ulch occurred in the presence of customers and the plaintiff admits that he did not write the type of statement which he had been instructed to write. Therefore, although the the Court agrees that the plaintiff has met the first two elements of a retaliation case (institution of a worker's compensation proceeding and discharge) the plaintiff cannot show the required causal connection that he would not have been discharged "but for" the filing of the workers' compensation claim. The Court finds that, viewing the record as a whole, a rational trier of fact could not find for the plaintiff on this cause of action. See Williams v. Griffin, 952 F.2d 820 (4th Cir. 1991). The cause of action for retaliatory discharge for filing a worker's compensation claim is, accordingly, dismissed.

### Disparate Treatment Claim

McCutcheon's objections contain an argument heading for disparate treatment, but he only argues the theory of hostile work environment. Therefore, he has not properly preserved any objections to the disparate treatment recommendation. Fed. R. Civ. P. 72(b) states:

> Within ten days after being served with a copy of the recommended disposition, a party may serve and file **specific, written objections to the proposed findings and recommendations**. . . The district judge to whom the case is assigned shall make a de novo determination upon the record, or after additional evidence, of **any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule.**

Fed. R. Civ. P. 72(b) (emphasis added).

7

**Hostile Work Environment**

Plaintiff claims that his employer allowed him to be subjected to improper racially based comments, thus constituting a hostile work environment. Under a §1981 claim for hostile work environment, it is necessary to show the employee was subjected to racially offensive conduct so severe or pervasive as to alter a condition of employment and create an abusive working environment. The cited conduct must also be imputable to the employer. See <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179 (4th Cir. 2001). Plaintiff alleges in his objections that the following comments by co-workers constitute evidence of a hostile work environment:

1. Comments about being married to a white woman;
2. Comments about not sticking with "the brothers" when he did not take the blame for his black co-manager's failure to clean up;
3. Comments by black employees known as "the posse" over the loud speaker; and
4. Other racial remarks by African-American co-workers.

While these comments were obviously out of line and made it unpleasant at times for the plaintiff at work, the comments do not rise to the level required for a §1981 hostile environment claim. Moreover, the remarks are of a "general and conclusory nature". (Report and Recommendation, page 23) Finally, the plaintiff has made no showing that the comments were imputable to the employer. The plaintiff's cause of action for hostile work environment under §1981 is dismissed.

**Retaliation Claim under §1981**

The plaintiff contends that he engaged in protected activity when he complained of racial discrimination and that he was terminated for engaging in the protected conduct. The Magistrate Judge opined that the plaintiff has presented questions of fact concerning his §1981 retaliation claim. Wal-Mart has objected to this recommendation on the basis that the events leading to the termination were undisputed and that McCutcheon has not proved that these reasons were pretextual. As noted by the Magistrate Judge, in order to show that the reasons given by the employer for the discharge were a

8

pretext for discriminatory conduct, McCutcheon must show that "but for" the retaliatory intent, the plaintiff would not have been fired. This may be shown by direct or circumstantial evidence. <u>Reeves v. Sanderson Plumbing Products, Inc</u>., 530 U.S. 133 (2000).

The Court agrees with the Magistrate Judge that the record contains some evidence that could be construed as showing pretext. McCutcheon appears to have had a good employment record. The record reveals that alleged racially-motivated comments were made to him; the record also reveals that McCutcheon complained about these comments and actually filed a charge of discrimination with SCHAC. He testified that the district manager told him that he should not have filed a complaint but should have kept the matter "in house." Taken in the light most favorable to the plaintiff, a reasonable fact-finder could find that the plaintiff was discharged in retaliation for taking protected action and that the reason given by the employer was pretextual.

## **Breach of Contract Claims**

The Magistrate Judge cites South Carolina case law that employment at will may be altered by mandatory language in an employee handbook. <u>See</u> <u>Horton v. Darby Elec. Co., Inc.</u>, 360 S.C. 58, 599 S.E.2d 456 (2004). He also notes that the recent South Carolina Supreme Court case of <u>Hessenthaler v. Tri-County Sister Help, Inc.</u>, 365 S.C. 101, 616 S.E.2d 694 (2005), holds that it is appropriate for courts to decide whether as a matter of law the disclaimer and statements contained in the handbook, taken as a whole, create enforceable promises. The Magistrate Judge found that, although the disclaimer in the acknowledgement was not conspicuous, the handbook did not generally contain enforceable promises. Therefore, no contract was created except as to the statements forbidding retaliation.

The plaintiffs contend that the evidence is not clear that they actually signed the acknowledgement attached to the employee handbook which stated that the handbook did not create

9

a contract. Therefore, they contend that, in addition to the retaliation portions, the handbook creates a cause of action for breach of contract and wrongful termination. This argument lacks merit. Although McCutcheon initially testified that he was not sure he signed the acknowledgement, when asked if the paragraph in the acknowledgement looked familiar, he finally said: "I'm going to have to say yes." (McCutcheon Depo., page 66) Mrs. McCutcheon testified that she received the handbook and that she signed a lot of papers when she went to work at Wal-Mart. (Mrs. McCutcheon depo., p. 16) Additionally, the open door and coaching policies use the term "may" and cannot be construed to contain promises. See Crosland depo., Exhibit 1. Moreover, courts have consistently held that general policy statements of non-discrimination do not create contracts. Id., 616 S.E.2d at 698.

The defendant asserts that the retaliation language in the handbook does not constitute mandatory promises. The retaliation language in the handbook provides:

> Associates who are subjected to conduct prohibited under this policy are encouraged to report their concern to any salaried member of management  Prompt action will be taken and **no retaliation will occur against the Associate making the report**. All allegations of harassment/inappropriate conduct will be investigated . . . [A]ppropriate action will be taken to eliminate such conduct and to ensure there will be no recurrence of the conduct. (emphasis added)

The Court agrees with the Magistrate Judge that mandatory words such as "will" used in a handbook could be found by a trier of fact to be a promise, thus supporting a finding that a contract existed or wrongful discharge occurred.

### Mrs. McCutcheon's Constructive Discharge Claim

The Magistrate Judge concludes that Mrs. McCutcheon's constructive discharge claim should be dismissed. Under South Carolina law, in order to prevail on a constructive discharge claim, the plaintiff must show the "employer deliberately makes an employee's working conditions intolerable and thereby forces her to quit her job." See Goldsmith v. Mayor and City Council of Baltimore, 987

10

F.2d 1064, 1071-1072 (4th Cir. 1993). Mrs. McCutcheon's objections state:

> The Plaintiff presented general comments of her marriage, comments regarding her husband's race, the "posse," the hostile environment between blacks and whites. The Plaintiff witnessed the termination of her husband and the failure of the Defendant to protect the Plaintiff and her husband from the hostile work environment thereby making the Plaintiff's working conditions so difficult that a reasonable person in the employee's position would feel compelled to resign.

The Court agrees with the Magistrate Judge that, even though the other employees' alleged comments were undoubtedly unpleasant and uncalled for, the plaintiff's proof does not rise to the level of an employer deliberately making Mrs. McCutcheon's working conditions intolerable and thereby forcing her to quit her job.

## Conclusion

I find as a matter of law that there are no genuine issues of material fact as to the plaintiff Linda McCutcheon's case and **GRANT** summary judgment to the defendant on her case in its entirety.

The defendant is also entitled to summary judgment as a matter of law in Winfield McCutcheon's case on his FIRST, SECOND, AND FOURTH causes of action. The motion for summary judgment is **DENIED** as to the THIRD cause of action. Summary judgment is also **GRANTED IN PART** and **DENIED IN PART** as follows as to McCutcheon's FIFTH and SIXTH causes of action: Except as to the claims based on the alleged right not to be retaliated against as set forth in the employee handbook, summary judgment is **GRANTED**.

For the foregoing reasons, the undersigned overrules all objections, adopts the Report and Recommendation of the Magistrate Judge, incorporates it herein by reference, and **GRANTS** in part and **DENIES** in part the defendant's motion for summary judgment.

**AND IT IS SO ORDERED.**

                                            s/ R. Bryan Harwell
                                            R. Bryan Harwell
                                            United States District Court Judge

March 28, 2006
Florence, South Carolina